1 William D. Bowen (SBN 254398)
wbowen@economyofmind.com
2 LAW OFFICES OF WILLIAM D. BOWEN
3 14662 Horticultural Drive
Hacienda Heights, CA 91745
4 Telephone: 213.761.4332
5 Facsimile: 213.402.8145

6 *Attorneys for Elizabeth LaBau*

7
**UNITED STATES DISTRICT COURT**
8
**CENTRAL DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| ELIZABETH LABAU, an individual, | Case No.: 2:17-cv-04077 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **Copyright Infringement** |
| TELEVISION Food Network G.P., a New York general partnership, and DOES 1-10, | **REQUEST FOR JURY TRIAL** |
| Defendants. | **Trial Date: None** |

COMPLAINT

Plaintiff Elizabeth LaBau, by and through her attorneys of record, Law Offices of William D. Bowen, alleges as follows:

## JURISDICTION AND VENUE

1. The court has original jurisdiction of this action under 17 U.S.C. § 501, *et seq.*, and 28 U.S.C. §§ 1338(a).

2. Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the within claims occurred in this judicial district, and under 28 U.S.C. § 1400(b) in that it is a judicial district where defendant has committed acts of copyright infringement and had a regular and established place of business.

## THE PARTIES

3. Plaintiff ELIZABETH LABAU ("Plaintiff") is a resident of Sandy, Utah, that does substantial business in Los Angeles, California.

4. Defendant TELEVISION FOOD NETWORK G.P. ("Defendant" or "Food Network") is, on information and belief, a New York general partnership with a place of business at 75 Ninth Avenue, New York, NY 10011.

5. Defendant is, on information and belief, a joint venture between Scripps Networks Interactive, Inc., an Ohio corporation, and Tribune (FN) Cable Ventures, Inc., a Delaware corporation, who share ownership of the venture's assets.

6. Defendant is owner of the American basic cable and satellite television channel Television Food Network, commonly known as Food Network.

7. The true names and capacities of the defendants named herein as DOES 1 through 10, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues said defendants by said fictitious names. Plaintiff is informed and believes, an thereon alleges, that each of the defendants

designated herein as DOE is legally responsible for the events and happenings hereinafter alleged and legally caused injury and damages proximately thereby to Plaintiff as alleged herein. Plaintiff will seek leave to amend the Complaint when the true names and capacities of said DOE defendants have been ascertained. Food Network and DOES 1 through 10 are hereinafter collectively referred to as "Defendants."

8. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

9. Plaintiff is informed and believes, and on that basis alleges, that each of Food Network and DOES 1 - 10 has acted in concert and participation with each other concerning the claims in this Complaint.

10. Plaintiff is informed and believes, and on that basis alleges, that each of Food Network and DOES 1 - 10 was empowered to act as the agent, servant and/or employees of each other, and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of them.

## GENERAL ALLEGATIONS

11. At all times relevant hereto, Plaintiff has been and still is the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments thereto) (the "Copyright Act") to reproduce, distribute, display, or license the reproduction, distribution, and/or display of her audiovisual multimedia work, listed on Exhibit 1 attached hereto, which is the subject of this action (referred to herein as the "Snow Globe Cupcakes Video") throughout the United States.

12. Plaintiff is an entrepreneur who has used the experience, talent, and creativity developed over years of hard work as a pastry chef to develop her own brand, website, and social media presence using the name SugarHero.

13. SugarHero is devoted to sharing fun, creative, and modern dessert recipes. The tagline is "Be a sugar hero in your own kitchen!" and LaBau truly wants to inspire and help people make amazing desserts through detailed recipes, photo tutorials, and video tutorials.

14. As an entrepreneur, Plaintiff Elizabeth LaBau manages each and every element of her business. She does all of the recipe development, writing, photography, and video creation herself, with each being the sole product of her own creativity and hard work.

15. While SugarHero began as a passion project, through her years of hard work and late nights, the website has come to be LaBau's full-time job and income source and she works to keep her brand competitive with numerous other food and cooking sites, many of which are staffed far more extensively and backed by significantly more capital.

16. Competing with numerous corporate food websites, often backed by large companies with deep pockets, is very difficult as an individual, and requires endless work, continual learning about social media strategies and SEO, and most importantly, unique ideas that are eye-catching and will attract new readers in an oversaturated food market place.

17. Despite all these challenges, LaBau has succeeded in her work. LaBau's website has become extraordinarily successful, and typically receives 300,000-500,000 page views a month. SugarHero has succeeded because of LaBau's innovative ideas, creativity, and unique offerings.

18. LaBau's talent and creativity has been recognized by readers, clients, and peers in the industry. SugarHero was named an Editor's Choice Best Baking Blog by Better Homes & Gardens in 2015. Her website and her recipes have been featured in media outlets like The Chicago Tribune, The Los Angeles Times, The Christian Science Monitor, Better Homes & Gardens magazine, Food & Wine magazine, TheKitchn.com, The Huffington Post, and ProBlogger.com, and on

numerous television shows and news programs. She is a recognized expert in the dessert field: she has published a candy cookbook (The Sweet Book of Candy Making, Quarry Books 2012), has been the Candy Expert at About.com for over a decade, and has developed and hosted two video dessert classes with the video learning company Craftsy.com.

19. SugarHero relies primarily on advertising revenue, and ad revenue is entirely dependent on the number of page views a website receives. In order to be profitable and continue to function as a sustainable business, LaBau must continuously work to sustain and increase page views to SugarHero.com. Social media is a huge traffic driver and an extremely important part of keeping the website profitable. Having a post on Facebook go viral can provide a huge boost in income. Millions of views can translate to thousands or tens of thousands of dollars in income in a short period of time, and so creating Facebook videos has become a strategic part of the SugarHero business model. These videos are created specifically to gain popularity and drive traffic to SugarHero.com.

20. One of Plaintiff's most successful ideas involved the creation and demonstration of edible "snow globe cupcakes." Plaintiff came up with an original recipe idea for snow globe cupcakes, which involved using gelatin sheets, an uncommon ingredient, and small water balloons to create edible "globes" to place on holiday cupcakes. Plaintiff received considerable attention for her idea through the years, which became very popular.

21. The snow globes cupcake recipe was first published on SugarHero.com in 2014, and quickly became very popular due to how unique and eye-catching it is. The recipe required extensive testing, over the course of several weeks, to perfect the gelatin globes. The globes use gelatin sheets, which are an uncommon ingredient in America and typically need to be special-ordered online at a high cost.

22. The Snow Globe Cupcake recipe first went "viral" in 2015 thanks to a Facebook post which was shared over 740,000 times in just a few days—the traffic to the post was so great, LaBau's host estimated she was receiving 500,000 hits an hour, and it completely shut down her site for a period of time. With that single viral post, LaBau more than tripled her typical income that month, and got thousands of dollars in Amazon affiliate sales for the gelatin sheets the recipe requires.

23. Hundreds of people have shared photos, comments, and feedback on LaBau's site, her Facebook page, and her Instagram page after making the cupcakes. They have been featured and credited to her on websites like Delish.com, and she has appeared on local news stations demonstrating how they are made. They are truly her "signature recipe."

24. Seeing the popularity of her snow globe cupcakes, Plaintiff decided to produce a video to share the recipe and illustrate their preparation. In November 2016, LaBau decided to create a short Facebook-style video showing how the cupcakes are made, with the goal of driving traffic to her site for the actual recipe.

25. Plaintiff spent extensive time preparing for, shooting, and editing the Snow Globes Cupcake Video starting in November of 2016 and ending in December of 2016. While production and editing involved significant time, money, and effort, Plaintiff deemed it worthwhile and valuable to promote her business.

26. After significant hard work and effort, Plaintiff published her video on December 3, 2016. The video received significant attention after it was posted, garnering over 12,000 likes, 114,000 shares, 3,200 comments, reaching over 15.9 million people, and resulting in over 5.6 million views in the 3 weeks leading up to Christmas, as well as many photos and testimonials from readers who have made the cupcakes and loved them.

27. About 3 weeks after her video was posted, Plaintiff became aware of a video on the Food Network Facebook page also illustrating the preparation of

snow globe cupcakes (the "Food Network Video"), which was published on their Facebook page on December 22, 2016.

28. The Food Network video copied numerous copyrightable elements of Plaintiff's work precisely, including but not limited to choices of shots, camera angles, colors, and lighting, textual descriptors, and other artistic and expressive elements of Plaintiff's work.

29. The Food Network Video thus plagiarizes copyrightable elements of Plaintiff's proprietary work, and is either a copy thereof or a derivative work prepared therefrom.

30. On December 26, 2016, Plaintiff wrote Food Network on their Facebook page to request that they give her credit and attribution for her work, providing a link to her video for reference.

31. Despite Plaintiff's request, Defendants not only failed to remove their infringing material from their Facebook page, but ignored Plaintiff completely, failing to even offer her attribution or credit.

32. As of the date of filing of this Complaint, Defendants' video remains active and available.

33. Plaintiff suffered severe losses because of Defendants' actions, and Defendants profited from her work. Defendants' video as of the signing of this Complaint has garnered 145,000 likes and over 11,000,000 views, business and attention that would have gone to Plaintiff and her business but for Defendants' wrongful acts.

34. Defendants' wrongful actions caused Plaintiff severe distress. The experience detracted from Plaintiff's experience of sharing her work both psychologically and economically. Because of Defendants' wrongful acts, Plaintiff had to focus all of her efforts on dealing with her work being taken, copied, and used without her permission.

35. In copying her work shot-for-shot, Defendants willfully and intentionally sought to appropriate Defendant's hard work for their own profit without bearing the cost thereof. The time commitment of recipe development and the cost of ingredients, coupled with the time cost of photographing and videoing the cupcakes, was a substantial investment for Plaintiff, an individual who runs a website based solely on her own work. Defendants sought to realize the same profit without investing the same amount of time, money, and creative thought, and to take away profits from Plaintiff that she would have realized but for their wrongful acts.

36. The Snow Globe Cupcakes Video is an original work, copyrightable under the Copyright Act. Plaintiff has applied for a copyright registration from the Copyright Office for the video. The registration number for the video is set forth in Exhibit 1. Thus, Plaintiff has the exclusive rights and privileges to reproduce, distribute, and display the Snow Globes Cupcakes Video.

37. Plaintiff has never authorized any of the Defendants, by license or otherwise, to copy, reproduce, distribute, or display any of the copyrighted material from the Snow Globes Cupcake Video, nor to prepare derivative works based on the Snow Globes Cupcake Video.

38. Defendants infringed Plaintiff's exclusive rights in the Snow Globes Cupcake Video by copying, reproducing, duplicating, distributing, and displaying it and/or derivative works derived therefrom without Plaintiff's permission.

39. Each infringing copy, duplication, sale, license, or display of the Snow Globes Cupcake Video, as well as the threat of continuing the same, constitutes a separate claim against Defendants under the Copyright Act. Plaintiff has sustained, and will continue to sustain, substantial damage to the value of her copyrights in that the previously described activities of Defendants have diminished and will continue to diminish the revenues that Plaintiff would otherwise receive. In addition, Defendants have realized unlawful and unjust

profits from their unauthorized and illegal copying, duplication, distribution, and display of copies of the Snow Globes Cupcake Video.

40. Defendants continue to infringe the copyrights listed on Exhibit 1, and unless temporarily, preliminarily and permanently enjoined by Order of this Court, will continue to infringe said copyrights, all to Plaintiff's irreparable injury. As a result of Defendants' acts of infringement, Plaintiff is without an adequate remedy at law in that damages are difficult to ascertain and, unless injunctive relief is granted as prayed for herein, Plaintiff will be required to pursue a multiplicity of actions.

41. As a direct result of the conduct of Defendants, Plaintiff has suffered and continues to suffer damages in an amount to be determined. Plaintiff was unable to realize profit from her work preparing the video, as attention for her work was overshadowed by the unauthorized copying of Defendants and use of their overwhelming corporate presence to take away from Plaintiff's own efforts.

42. Defendants have committed all of the aforesaid acts deliberately, willfully, maliciously and oppressively, without regard to Plaintiff's proprietary rights.

## FIRST CLAIM FOR RELIEF

**(Copyright Infringement Against All Defendants)**

43. Plaintiff repeats and realleges the averments contained in paragraphs 1-42 as though fully set forth herein.

44. The above-described conduct by Defendants constitutes willful copyright infringement under the Copyright Act.

45. As a result of the above-described conduct by Defendants, Plaintiff has been damaged in an amount to be proven at trial.

46. By reason of the copyright infringement described above, Plaintiff is entitled to recover Defendants' profits to the extent the same are not included as part of Plaintiff's damages.

47. In the alternative, at the election of Plaintiff, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from:

   (a) infringing, or contributing to or participating in the infringement by others the copyright in the Snow Globes Cupcake Video or acting in concert with, aiding and abetting others to infringe said copyright in any way;

   (b) copying, duplicating, selling, licensing, displaying, distributing, or otherwise using without authorization copies of the Snow Globes Cupcake Video to which Plaintiff is owner of exclusive rights under the respective copyrights or derivative works based thereon;

3. That Defendants be required to account for and pay over Plaintiff the actual damages suffered by Plaintiff as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiff's copyright or exclusive rights under copyright and to pay such damages to Plaintiff as to this Court shall appear just and proper within the provisions of the Copyright Act, or, in the alternative, at Plaintiff's election, statutory damages for infringement of each separate copyright as set forth in 17 U.S.C. § 504;

4. For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law;

5. For an award of attorneys' fees pursuant to 17 U.S.C. § 505;

6. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

7. For such other and further relief as the Court deems just and proper.

Dated: June 1, 2017

Respectfully submitted,

LAW OFFICES OF WILLIAM D. BOWEN

By: _____/s/_____
       William D. Bowen

*Attorneys for Elizabeth LaBau*

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues so triable.

Dated: June 1, 2017                    Respectfully submitted,

                                                  LAW OFFICES OF WILLIAM D. BOWEN

                                                  By: _____/s/_____
                                                               William D. Bowen

                                                *Attorneys for Plaintiff Elizabeth LaBau*